**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GABRIEL PATLAN, RYAN CORNELL, and LA DELLA LEVY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | Civil Action No. 18-cv-09546<br><br>**OPINION** |

WENDY VASQUEZ, on behalf of herself and all individuals similarly situated,

Plaintiffs,

v.

BMW OF NORTH AMERICA, LLC,

Defendants.

VIKKIE WILKINSON, on behalf of herself and the Putative Class,

Plaintiffs,

v.

BMW OF NORTH AMERICA, LLC and BAYERSICHE MOTOREN WERKE AKTIENGESELLSCHAFT,

Defendants.

**CECCHI, District Judge.**

This matter comes before the Court on defendant BMW of North America, LLC's

("Defendant" or "BMW NA") motions to dismiss the putative class action complaints of Gabriel

Patlan ("Patlan"), Ryan Cornell ("Cornell"), and La Della Levy ("Levy") (collectively, the "Patlan Plaintiffs") (ECF No. 1 ("Patlan Compl.")); Wendy Vasquez ("Vasquez") (Case No. 19-cv-00144, ECF No. 1 ("Vasquez Compl.")); and Vikkie Wilkinson ("Wilkinson") (Case No. 19-cv-09156, ECF No. 1 ("Wilkinson Compl.")) (collectively, "Plaintiffs").[1]  The Court has considered the papers in support of and in opposition to the motions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, Defendant's motions are **DENIED IN PART** and **GRANTED IN PART**.

## I.  BACKGROUND

### A. Factual Background[2]

#### 1.  Overview

These consolidated cases involve allegations of defective blower-motor wiring systems and Positive Crankcase Ventilation ("PCV") valve heaters (the "Defects") present in over one million BMW automobiles (the "Defective Vehicles").[3]  Patlan Compl. ¶¶ 1–2.  Defendant BMW of North

---

[1] ECF references are to the consolidated docket, Case No. 18-cv-09546, originally the Patlan docket, unless otherwise noted.  ECF references to the Vasquez docket, Case No. 19-cv-00144, are proceeded by "*Vasquez*" and ECF references to the Wilkinson docket, Case No. 19-cv-09156 are proceeded by "*Wilkinson*."

[2] For the purposes of these motions to dismiss, the Court accepts the factual allegations in the complaints as true and draws all inferences in the light most favorable to the Plaintiffs.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Because the overarching allegations are largely similar across the three complaints presented in this consolidated action, the Court relies on the Patlan Plaintiffs' allegations in the Factual Background section and supplements those facts with allegations from Wilkinson's and Vasquez's complaints as appropriate.

[3] The blower-motor controls air flow for a vehicle's heating and cooling system and is controlled by a blower-regulator, which uses a wiring harness with connectors coated with tin material at their ends.  Patlan Compl. ¶ 33.  The blower-motor wiring system Defect is present in the following vehicles:  2006-2011 3 Series Sedan 323i, 325i, 325xi, 328i, 328xi, 330i, 330xi, 335i, 335xi, M3; 2006-2011 3 Series Wagon 325xi, 328i, 328xi; 2007-2011 3 Series Coupe 328i, 328i xDrive, 328xi, 335i, 335i xDrive, 335is, 335xi, M3; 2007-2011 3 Series Convertible 328i, 335i, 335is, M3; and 2009- 2011 3 Series Diesel 335d.  *Id.* ¶ 20 n.1

A vehicle's PCV system removes harmful vapors from its engine and prevents them from traveling into the atmosphere.  *Id.* ¶ 42.  The PCV valve heater prevents the PCV system from freezing.  *Id.*

America, LLC is a Delaware corporation with its principal place of business, its North American headquarters, located in Woodcliff Lake, New Jersey.  *Id.* ¶ 14.  BMW NA imports, distributes, warrants, and markets BMW vehicles in North America.  ECF No. 5-1 at 5.

Plaintiffs contend that the alleged Defects can cause the Defective Vehicles to "spontaneously combust and catch fire," even when the vehicles are not in operation.  Patlan Compl. ¶ 3.  Plaintiffs contend that the Defects can and do result in personal injury, vehicle destruction, and injury to nearby property.  *Id.*  Plaintiffs aver that BMW NA was aware of such Defects as of 2011 for the blower-motor wiring and 2012 for the PCV valve heaters, but failed to address them, repair them, or warn consumers or the National Highway Traffic Safety Administration ("NHTSA") about the issues.[4]  *Id.* ¶¶ 4, 26.  In fact, Plaintiffs assert that BMW NA opted to state publicly that no such Defects existed, instead blaming consumers for fires by "claiming that they resulted from poor maintenance, unauthorized replacement parts, and even rodent nests."  *Id.* ¶¶ 4–5, 25.  Plaintiffs insist such course of conduct resulted from the company's concerns about how candid disclosure would affect its reputation and consumers' willingness to purchase, own, and/or drive BMW vehicles.  *Id.* ¶ 6.  Plaintiffs insist that the Defects, and respective negative publicity, have diminished the value of their vehicles and resulted in unreimbursed out-of-pocket expenses.  *Id.* ¶¶ 80–83.  Accordingly, Plaintiffs pursue this putative

---

The PCV valve heater Defect is present in the following vehicles:  2008-2011 1 Series Coupe 128i; 2008-2011 1 Series Convertible 128i; 2007-2011 3 Series Sedan 328i, 328xi, 328i xDrive; 2007-2011 3 Series Wagon 328i, 328xi; 2007-2011 3 Series Coupe 328i, 328xi, 328i xDrive; 2007-2011 3 Series Convertible 328i; 2007-2011 5 Series Sedan 525i, 525xi, 528i, 528xi, 530i, 530xi; 2007 5 Series Wagon 530xi; 2007-2011 X3 SAV X3 3.0si, X3 xDrive30i; 2007-2011 X5 SAV X5 xDrive30i; 2007-2011 Z4 Roadster Z4 3.0i, Z4 3.0si, Z4 sDrive30i; and 2007-2008 Z4 Coupe Z4 3.0si.  *Id.*

[4] The NHTSA has the responsibility and authority under federal law to investigate and remediate motor vehicle safety defects.  ECF No. 5-1 at 13.

class action suit for damages, restitution, and equitable relief in light of BMW NA's alleged unlawful, unfair, and fraudulent business practices, and breach of warranties.[5]  *Id.* ¶¶ 8–9.

### 2.   The NHTSA Investigation and BMW Recalls

Plaintiffs allege that following a 2017 ABC News investigation into reports of various BMW vehicles spontaneously combusting and extensive reports of the Defects by consumers on the NHTSA website, the NHTSA commenced an investigation into the fire-related incidents.  *Id.* ¶¶ 21–29.  On October 8, 2017, following meetings with the NHTSA as part of its investigation, Defendant initiated two recalls affecting approximately 1.4 million vehicles and acknowledged that the Defects caused fires.[6]  *Id.* ¶ 30.  On or about December 18, 2017, Defendant issued letters to Defective Vehicle owners regarding the defects and announcing planned repairs—repairs which had not commenced as of the filing of the present complaint.  *Id.* ¶ 31.

The NHTSA's Safety Recall Report stated that BMW had first received reports of fires involving model year 2006 BMW vehicles following incidents in 2007 and 2008 and received reports of additional fires originating in the heating and cooling systems through 2011.  *Id.* ¶¶ 35–37.  Accordingly, BMW concluded in 2011 that a defect in the blower-motor wiring caused fires, and, per the Report, in May 2011, BWM implemented changes to the design or manufacturing of the blower-regulator, though it did not notify customers of the Defect, correct the Defect in already-purchased Defective Vehicles, or notify the NHTSA, failing to acknowledge the problem publicly until 2017.  *Id.* ¶¶ 37–41.

---

[5] Plaintiffs' class action allegations are omitted from this Opinion for purposes of addressing Defendant's motion to dismiss arguments and will be examined at a subsequent stage of this litigation.

[6] Specifically, NHTSA Campaign Number 17V-676 includes a recall of 672,775 BMW Vehicles due to a defective blower-motor.  *Id.* ¶ 33.  NHTSA Campaign Number 17V-683 includes a recall of 740,561 BMW Vehicles due to a defective PCV valve heater.  *Id.* ¶ 42.

Plaintiffs further contend that BMW's knowledge regarding a PCV valve heater defect dates back to fire incidents in 2009 involving model years 2006 and 2007 BMW vehicles.  *Id.* ¶ 44.  Following implementation of a parts return program, BMW's analysis of returned parts in 2011 and 2012 led it to determine a PCV valve heater defect existed and presented a risk of causing fires.  *Id.* ¶ 45.  Again, as with the blower defect, no action was taken on BMW's part to remedy the situation or properly notify consumers or the NHTSA until 2017.  *Id.* ¶ 47.

### 3.    Misrepresentations, Omissions, and Breaches

The crux of Plaintiffs' complaints is that BMW NA affirmatively mislead and/or improperly concealed the Defects' existence in their purchased vehicles.  Plaintiffs specifically contend that the conduct at issue renders Defendant's various representations in terms of safety and quality of its vehicles "at the heart of [it's] marketing campaign" to be false and, as such, those statements improperly induced Plaintiffs and other consumers to buy BMW's Defective Vehicles. *Id.* ¶¶ 47–50.  Likewise, Plaintiffs insist that BMW breached its 48-month/50,000 mile warranty by selling vehicles with the Defects.  *Id.* ¶¶ 51–53.  Plaintiffs explain that such inherent defects were incapable of detection upon purchase and that they "reasonably and in good faith relied upon BMW's representations regarding the quality and safety of its vehicles and component parts."  *Id.* ¶ 54.

### 4.    Patlan Plaintiffs

Patlan owns a 2011 BMW 328i, purchased on September 10, 2015, and is a citizen of California.  Patlan Compl. ¶¶ 10, 64.  Cornell owns a 2011 BMW 328i, purchased on September 14, 2016, and is a citizen of California.  *Id.* ¶¶ 11, 57.  Levy owned a 2007 BMW 328i, purchased in 2010, and is a citizen of Nevada.  *Id.* ¶¶ 12, 72.  Each Plaintiff opted to purchase his or her vehicle based on BMW's messaging regarding manufacturing quality and commitment to safety and driving performance and would not have purchased the vehicle if he or she had knowledge of

the falsity of such representations and the existence of the Defects. *Id.* ¶¶ 57–58, 64–65, 72, 76. Patlan and Cornell each allege that after receiving a letter from BMW about the Defects in their vehicles, they requested that BMW repair their vehicles, but were told BMW was unable to do so and no subsequent communication from BMW occurred. *Id.* ¶¶ 59–60, 66–67. Each alleges he suffered injury insofar as his BMW 328i has been significantly diminished in value and does not perform the basic function for which it was purchased without risk of fire. *Id.* ¶ 62, 70. Further, both contend that BMW did not offer a rental vehicle, reimburse out-of-pocket expenses, or provide compensation for loss of vehicle value. *Id.* ¶¶ 63, 71. Additionally, Patlan attempted to sell his vehicle in January 2018, but the buyer with whom he reached an agreement on general sale terms backed out after learning about the Defects. *Id.* ¶ 68.

Levy's experience differs—when she woke up on September 17, 2015, she found that her BMW 328i, turned off and parked in her driveway overnight, had caught fire and been burned beyond repair, destroying a number of personal belongings. *Id.* ¶¶ 73–74. A local auto repair shop, "BMW Only," identified the cause as an electrical fire. *Id.* ¶ 75. Levy claims she lost the entire value of her BMW 328i, was forced to pay certain out-of-pocket expenses related to the fire and the loss of her Vehicle, and that she pays higher insurance premiums as a result of the fire. *Id.* ¶ 78. She adds that BMW did not reimburse her for loss of the vehicle, loss of her personal property, or any out-of-pocket expenses. *Id.* ¶ 79.

### 5. <u>Vasquez</u>

Vasquez, a citizen of Maryland, owns a 2007 BMW 328i. Vasquez Compl. ¶¶ 5, 18. Vasquez purchased the vehicle from Rosenthal Acura, which transferred the vehicle from its BMW of Alexandria dealership in June 2013. *Id.* ¶ 18. In October 2017, Vasquez was driving her BMW vehicle on the highway when it lost power and the brakes would not engage. *Id.* ¶ 19. After the vehicle's lights began flashing, its electrical system "went out completely," it began to smoke, and

it ultimately caught on fire. *Id.* Vasquez did not know at that point that BMW was already aware of the Defects. *Id.* ¶¶ 20–21. Thereafter, in November 2017, BMW sent notices to Vasquez informing her of the recalls involving the Defects. *Id.* ¶¶ 26–29. Vasquez explains that her vehicle "sat dormant and unrepaired" at a BMW dealership for months following the incident because BMW was not ready to effectuate the repairs. *Id.* ¶ 35. Eventually, Vasquez contends, the BMW dealership incorrectly informed her that her vehicle was not within the scope of the recall and thus would not provide her with a loaner car after December 18, 2017. *Id.* ¶¶ 36, 41. BMW NA likewise "made these same false representations to Plaintiff as had the dealer." *Id.* ¶ 36; *see id.* ¶¶ 39–41. Vasquez explains that refusals to make the necessary repairs pursuant to the recall persisted through filing of the instant complaint, leaving her with tens of thousands of dollars in rental car expenses in addition to diminution in value of her inoperable vehicle. *See id.* ¶¶ 55–56.

6.   Wilkinson

Wilkinson, a citizen of New York, purchased a pre-owned 2008 BMW 335xi on July 5, 2013. Wilkinson Compl. ¶ 20. The vehicle was purchased for approximately $31,000 and had approximately 49,000 miles on it. *Id.* Like the other Plaintiffs, Wilkinson relied upon BMW's advertisements and marketing materials touting its vehicles' quality and safety record, and would not have purchased the vehicle had she known about the defects, or would have paid less. *Id.* ¶¶ 21–22. Wilkinson alleges that upon learning of the recall for the blower motor wiring defect in 2017, she continuously sought repairs from her BMW dealer, but was informed they did not have the parts. *Id.* ¶ 23. She further notes the dealer assured her it was safe to drive upon her inquiry. *Id.* Nevertheless, on February 24, 2018, Wilkinson received an early morning phone call from her neighbor informing Wilkinson that smoke was coming from Wilkinson's BMW. *Id.* ¶ 24. Ultimately, the car went up in flames and was declared a total loss by Wilkinson's insurer with a cause attributed to the Defects. *Id.* ¶¶ 24–25. Wilkinson notes that she received all routine

maintenance and drove her vehicle in an intended and foreseeable manner. *Id.* ¶¶ 28–29.  As a result of the events, Wilkinson needed to purchase a new vehicle while still owing money on the loan used to purchase her BMW. *Id.* ¶ 30.

### B.  Procedural History

The initial complaint in this matter was filed by the Patlan Plaintiffs.  Patlan Compl.  The Patlan Plaintiffs assert claims for (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, *et seq.* (Count One); (2) breach of express warranty (Count Two); (3) breach of implied warranty (Count Three); (4) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (Count Four); (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.* (Count Five); (6) violation of California's False Advertising Law, Cal. Civ. Code § 17500, *et seq.* (Count Six); (7) violation of Nevada's Consumer Fraud Statute, Nev. Rev. Stat. § 41.600 (Count Seven); and (8) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* (Count Eight).  *Id.* BMW NA moved to dismiss pursuant to the primary jurisdiction doctrine, the prudential mootness doctrine, and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 5.  The Patlan Plaintiffs filed an opposition (ECF No. 12) and BMW NA replied (ECF No. 13).

Thereafter, Vasquez filed suit.  Vasquez Compl.  Vasquez asserts claims for (1) violation of the NJCFA (Count One); (2) "violations of consumer protection laws of states additional to New Jersey" (Count Two); and (3) common-law fraud (Count Three).  *Id.*  BMW NA moved to dismiss Vasquez's complaint without prejudice or stay the action under the "first-filed" rule. *Vasquez*, ECF No. 4.  Vasquez filed an opposition (*Vasquez*, ECF No. 11) and BMW NA replied (*Vasquez*, ECF No. 12).

Finally, Wilkinson filed suit.  Wilkinson Compl.  Wilkinson assert claims for (1) violation of the NJCFA (Counts One and Two); (2) common-law fraud (Count Three); (3) breach of express

warranty (Count Four); (4) breach of implied warranty (Count Five); (4) violation of the MMWA (Count Six); (5) violation of New York General Business Law ("NYGBL") §§ 349 and 350 (Counts Seven, Eight, and Nine); and (6) unjust enrichment (Count Ten). *Id.* BMA moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Wilkinson*, ECF No. 6. Wilkinson filed an opposition (*Wilkinson*, ECF No. 11) and BMW NA replied (*Wilkinson*, ECF No. 13).

Following briefing from the parties, the Court granted Plaintiffs' motion to consolidate the three cases pursuant to Federal Rule of Civil Procedure 42(a) and Local Civil Rule 42.1. ECF No. 45. Following consolidation, Plaintiffs and BMW NA both submitted multiple Notices of Supplemental Authority and respective responses.[7] ECF Nos. 105, 106, 107, 130, 132, 133, 134, 135. The Court considers Defendant's arguments across the three motions to dismiss and the Notices of Supplemental Authority as necessary in turn below.

## II.  <u>LEGAL STANDARD</u>

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips*, 515 F.3d at 234. Ultimately, a complaint "that offers 'labels and conclusions' or ... tenders 'naked assertions' devoid of further factual enhancement," will not

---

[7] "Generally, if pertinent and significant authorities come to a party's attention after the party's brief has been filed, the party may advise the court of the relevant authority through a Notice of Supplemental Authority; however, a Notice of Supplemental Authority should not advance new arguments that were absent from the movant's complaint." *Atkins v. Capri Training Ctr., Inc.*, No. 2:13-CV-06820 SDW, 2014 WL 4930906, at *10 (D.N.J. Oct. 1, 2014). Thus, the Court does not consider arguments set forth by either party for the first time in their Notices of Supplemental Authority.

withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.   DISCUSSION

### A.  BMW NA's Motion to Dismiss the Patlan Plaintiffs' Complaint

#### 1.   Primary Jurisdiction

BMW NA contends that the Court should stay the Patlan action during the recall period in deference to the NHTSA's primary jurisdiction. ECF No. 5-1 at 6–13. The primary jurisdiction doctrine may apply where a claim is originally cognizable in federal court, but enforcement of the claim requires the resolution of issues within the "special competence of an administrative body." *McQueen v. BMW of N. Am., LLC*, No. 12–6674, 2013 WL 4607353, at *3 (D.N.J. Aug. 29, 2013) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). The Third Circuit considers four factors in determining whether to refer a case to the primary jurisdiction of an agency:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

*Id.* at *4 (citation omitted).

Applying these factors, the Court finds that the NHTSA does not maintain primary jurisdiction over the Patlan Plaintiffs' instant pleading. Under the first factor, the Patlan Plaintiffs' consumer fraud and warranty claims are "squarely within the conventional experience of judges and court systems," and resolving the key issues of these claims does not require the expertise of the NHTSA. *Id.*; *Cohen v. Subaru of Am., Inc.*, No. 12–844, 2022 WL 721307, at *37 (D.N.J.

10

Mar. 10, 2022).  Similarly, under the second factor, the present claims are not particularly within the NHTSA's discretion.  In fact, "common law and warranty remedies have been explicitly preserved by the authorizing statute, indicating that this case falls squarely outside the domain of the NHTSA."  *McQueen*, 2013 WL 4607353, at *4 (citing 49 U.S.C. § 30103(d), (e)).  The third factor also disfavors the NHTSA's primary jurisdiction, because Defendant "has not identified any NHTSA rulings that a ruling from this Court might undermine or contradict."  *Cohen*, 2022 WL 721307, at *37.  While determination of the fourth factor is somewhat less clear given the recalls were initiated upon complaints to the NHTSA, "the NHTSA does not have a mechanism by which Plaintiff could be awarded damages, which pushes this factor in Plaintiff's favor."  *McQueen*, 2013 WL 4607353, at *5.  In any event, "this single factor cannot outweigh the others that disfavor abstention on primary jurisdiction grounds."  *Baykeeper v. NL Industries, Inc.*, 660 F.3d 686, 691 (3d Cir.2011).  Accordingly, the Court declines to invoke the primary jurisdiction doctrine and will not refer this matter to the NHTSA.

### 2.    Prudential Mootness

Next, BMW NA argues that the Patlan Plaintiff's claims are prudentially moot because BMW's recall programs provide complete relief to the vehicle owners.  ECF No. 5-1 at 13–20.  Under the prudential mootness doctrine, federal courts may "decline to exercise [their] discretion to grant declaratory and injunctive relief if the controversy is 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'"  *Sierra Club v. U.S. Army Corps of Engineers*, 277 F. App'x 170, 172 (3d Cir. 2008) (quoting *Chamber of Com. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)).  However, "the prudential mootness doctrine does not confer discretion on the Court to dismiss legal claims."  *Cohen*, 2022 WL 721307, at *36.  Courts have routinely declined to apply this doctrine where plaintiffs seek not just equitable relief, but legal relief that

exceeds what defendants are offering through a recall. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *40 (S.D.N.Y. July 15, 2016) ("Because the recalls, even those sufficient to remedy the defects, do not compensate Plaintiffs fully for the damages sought here, the Court declines to exercise its discretion to dismiss the remaining claims as prudentially moot."); *Verde v. Stoneridge, Inc.*, 2015 WL 5915262, at *4–5 (E.D. Tex. Sept. 23, 2015) (declining to apply the prudential mootness doctrine, despite a NHTSA-supervised recall, because plaintiff sought "relief such as the diminished value of the vehicle, incidental damages, and replacement of the entire clutch hydraulic assembly").

Here, the Patlan Plaintiffs assert various legal claims for damages beyond the injunctive relief provided by a recall. *See generally* Patlan Compl. Each of the Patlan Plaintiffs' respective contentions allege diminution in value of the Defective Vehicles (*see, e.g.*, *id.* ¶¶ 62, 70, 81, 127) and out-of-pocket expenses incurred (*id.* ¶¶ 63, 71, 78, 79, 116, 182, 197). Moreover, Plaintiffs filed a supplemental notice informing the Court of an additional recall in March 2022 involving the PCV valve heater, suggesting the possibility that the previous recall and respective repairs did not fully address the issues presented in the instant complaint. ECF No. 106. Accordingly, the Court finds that the Patlan Plaintiffs' claims are not prudentially moot.[8]

### 3.    Sufficiency of Damages Allegations

Defendant moves to dismiss the Patlan Plaintiffs' claims on the basis that Cornell and Patlan do not allege any losses and Levy's alleged damages are "totally speculative." ECF No. 5-

---

[8] Defendant's reliance on *In re Takata Airbag Prod. Liab. Litig.*, No. 15-MD-02599, 2022 WL 17546365 (S.D. Fla. Nov. 8, 2022) in its Notice of Supplemental Authority to buttress its contention that Defendant's recall program moots the Patlan Plaintiffs' claims is unavailing. ECF No. 133. As an initial matter, the opinion from the Southern District of Florida is not binding on this Court. In any event, as Plaintiffs adeptly explain in their response, Defendant's argument is unpersuasive at this juncture based on various factual and legal differences from the present claims. *See generally* ECF No. 134.

1 at 22–23.  Contrary to Defendant's contentions, Cornell and Patlan plausibly allege that their vehicles sustained a decrease in value as a result of the Defects existing at the time of purchase, which was exacerbated by the respective publicity surrounding those Defects and for which they were not compensated by Defendant.  Patlan Compl. ¶¶ 62–63, 70–71; *see In re Mercedes-benz Emissions Litig.*, No. CV 16-881 (JLL)(JAD), 2016 WL 7106020, at *3 (D.N.J. Dec. 6, 2016) (noting an injury is pled where a plaintiff "alleg[es] that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect." (quoting *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010))); *Opheim v. Volkswagen Aktiengesellschaft*, No. CV2002483KMESK, 2021 WL 2621689, at *16 (D.N.J. June 25, 2021) ("Also significant is that those cases dismissing NJCFA claims have done so by concluding that plaintiffs suffered *no* damages . . . .  Here, Plaintiffs allege a diminution in value and costs of replacements, damages sufficient to satisfy the requirement of an ascertainable loss." (emphasis added)).  Additionally, the March 2022 recall, discussed above, indicates that the vehicles continue to have issues with the PCV component, supporting Plaintiffs' contentions that their vehicles have lesser value.  ECF No. 106.  They likewise allege out-of-pocket expenses, including failure to provide a rental vehicle.  Patlan Compl. ¶¶ 63, 71.  The Court finds that Cornell's and Patlan's allegations are sufficient to survive Defendant's instant motion to dismiss.

Next, the Court considers whether Levy's damages claims are too speculative, as Defendant contends, to plausibly allege that her vehicle was destroyed by the Defects at issue in this case.  Levy asserts that after her vehicle was destroyed by a fire—one which occurred while the vehicle was not in operation—an examination by a repair shop specializing in BMWs revealed that an electrical fire was the cause.  Patlan Compl. ¶ 75.  Considering that Levy alleges her vehicle fell within the recalls' parameters, and other vehicles with such Defects experienced factually similar fire events, Levy's allegations "'raise a reasonable expectation that discovery will reveal

evidence of' the necessary element[s]" of the claims, and are thus sufficient at this stage. *Phillips*, 515 F.3d at 234-35 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Further, Defendant's argument that Levy will be unable to introduce evidence *proving* causation exceeds the scope of what this Court is to consider at the motion to dismiss stage. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

4.   <u>Warranty Claims</u>

Defendant next argues that the Patlan Plaintiffs' breach of warranty claims fail as untimely under BMW's four-year/50,000-mile New Passenger Vehicle Limited Warranty. ECF No. 5-1 at 24. Defendants contend the general rule in New Jersey "prohibit[s] breach of warranty act actions premised on defects that did not arise until after the warranty expired." *Alban v. BMW of N. Am., LLC*, 2010 WL 3636253, at *7 (D.N.J. Sept. 8, 2010) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604 (3d Cir. 1995)). Nevertheless, Plaintiffs note that courts in New Jersey have permitted such claims to proceed at the motion to dismiss stage where plaintiffs properly allege that a warranty is unconscionable. *See, e.g.*, *Henderson v. Volvo Cars of N. Am., LLC*, No. 09–4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010). "The traditional rule, which New Jersey . . . appear[s] to follow in the latent defect context, is that a plaintiff must plead both substantive as well as procedural unconscionability." *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW-CLW, 2014 WL 283628, at *14 (D.N.J. Jan. 24, 2014). Indeed, "a manufacturer's mere knowledge that a part will ultimately fail . . . does not alone make the time/mileage limitation unconscionable," unless such allegations are sufficiently combined with claims of procedural unconscionability. *See id.* (quoting *Henderson*, 2010 WL 2925913, at *9 n.6).

The Patlan Complaint asserts that "[a]ny such limitation of the warranties, or the time frame within which to bring claims, is unconscionable and void because of BMW's knowledge of the Defects at the time of sale or shortly thereafter." Patlan Compl. ¶¶ 54–56. Though the Patlan

14

Plaintiffs do allege concealment of the Defects, the complaint does not touch on unequal bargaining power, unreasonably favorable terms, or lack of meaningful choice—key procedural unconscionability factors that courts have considered in allowing breach of warranty claims to proceed on an unconscionability theory where the defect manifested beyond the express warranty period. *See Henderson*, 2010 WL 2925913, at *9 (concluding that plaintiffs sufficiently pleaded unconscionability at the motion to dismiss stage by alleging lack of "meaningful choice" in setting the warranty, a "gross disparity in bargaining power" between defendants and the class members, and that defendants had knowledge that the part would fail when sold); *Skeen*, 2014 WL 283628, at *14 ("It is not conclusory to state that a consumer purchasing a car has less bargaining power than the manufacturer and that he had no meaningful choice in setting the terms of the warranty."); *In re Volkswagen Timing Chain Prod. Liab. Litig.* ("*Timing Chain*"), 2017 WL 1902160 (same); *In re Samsung DLP Television Class Action Litig.* ("*Samsung*"), 2009 WL 3584352, at *5 (D.N.J. Oct. 27, 2009) (same).

Plaintiff's reliance on *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558 (D.N.J. 2012) is unavailing. There, the court explicitly noted, in allowing breach of express warranty claims to proceed, that plaintiffs "allegedly experienced symptoms of the defect during the warranty period," *id.* at 565, an allegation that the Patlan Plaintiffs do not make. *See generally* Patlan Compl. Further, in *Payne v. Fujifilm U.S.A., Inc.*, Civ. 07–385(JAG), 2007 WL 4591281 (D.N.J. Dec. 28, 2007), another case the Patlan Plaintiffs rely upon, plaintiff alleged "[c]lass members had no meaningful choice in determining those time limitations; the terms of the limited warranties unreasonably favored FUJIFILM over members of the Class; [and] a gross disparity in bargaining power existed as between FUJIFILM and members of the Class. *Id.* at *4. Such allegations do not exist in the instant pleading, as discussed above.

The Patlan Plaintiffs further argue that courts in Cornell and Patlan's home state, California, have permitted otherwise untimely breach of warranty claims to proceed at the motion to dismiss juncture where they involve an undisclosed defect.  ECF No. 12 at 25–26.  However, the cases they cite are inapposite as they involve the application of the laws of states with no relation to any of the Patlan Plaintiffs and/or claims other than breach of warranty.  *See Benkle v. Ford Motor Co.*, Case No. SA CV 16-1569-DOC (JCGx), 2017 WL 9486154, at *13 (C.D. Cal. Dec. 22, 2017) (analyzing claims for defects manifesting outside the express warranty period under Florida, Texas, and Nebraska law); *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 944 (C.D. Cal. 2012) (discussing latent defect disclosure requirements under the California CLRA); *McDermott v. Cummins, Inc.*, No. CV144209WHWCLW, 2016 WL 3287335, at *5 (D.N.J. June 7, 2016) (same for California UCL claims); *Erlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Ca. 2010) (same for both UCL and CLRA claims).  Accordingly, the Court will dismiss the Patlan Plaintiff's breach of express warranty claims without prejudice.[9]

### 5.    Consumer Fraud Claims

BMW NA next argues that the Patlan Plaintiffs' consumer fraud claims under New Jersey, California, and Nevada law fail because the allegations in the complaint do not satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  ECF No. 5-1 at 25–28.  BMW NA is correct that Rule 9(b)'s heightened pleading requirement applies to each relevant state's

---

[9] Defendant notes that the Patlan Plaintiffs' claims under the MMWA must be dismissed because they, too, fall with the breach of warranty claims.  ECF No. 5-1 at 25 n.13.  Defendant is correct that MMWA claims cannot survive independently of underlying warranty claims.  *See Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016) ("Claims under the MMWA depend upon the disposition of the underlying state law warranty claims . . .  Thus, if there exists no actionable warranty claim, there can be no violation of the MMWA." (internal citation and quotation omitted)).  However, Defendant fails to sufficiently argue that Plaintiffs cannot maintain their breach of implied warranty claims.  Thus, because those claims will proceed, so too may the MMWA claims.

consumer fraud statute.  *See, e.g.*, *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011) ("Rule 9(b) of the Federal Rules of Civil Procedure applies to claims under the [NJCFA]."); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Manley v. MGM Resorts Int'l*, No. 222CV01906MMDDJA, 2023 WL 3737509, at *6 (D. Nev. May 30, 2023) ("The Court agrees that, in addition to Rule 8's pleading requirements, Manley's NDTPA claim is subject to Rule 9(b)'s heightened pleading standard because it sounds in fraud.").  Under Rule 9(b), "a complaint that alleges fraud" must "state with particularity the circumstances constituting fraud or mistake." *Morano v. BMW of North America, LLC*, 928 F. Supp. 2d 826, 832 (D.N.J. 2013) (quoting Fed. R. Civ. P. 9(b)).

Defendant specifically moves to dismiss on the grounds that the Patlan Plaintiffs do not sufficiently allege that BMW NA had knowledge of a common defect as early as 2011 and 2012. ECF No. 5-1 at 26–27.  However, the Patlan Plaintiffs provide adequate allegations that specify the bases for BMW NA's purported knowledge.  For example, they allege that BMW received numerous complaints and incident reports about the Defects prior to the recalls.  Patlan Compl. ¶¶ 4, 6, 27–28, 33–46.  Though, as Defendant contends, other courts have previously found that "[a]wareness of a *few* customer complaints … does not establish knowledge of an alleged defect," *Baba v. Hewlett-Packard Co.*, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) (emphasis added), the mere fact the Patlan Plaintiffs' complaint only included a sample of such complaints is insufficient to rebuff dismissal at this stage.

Plaintiffs buttress the allegations of BMW's knowledge by citing an ABC News investigative report of which BMW NA would presumably have been aware, Patlan Compl. ¶¶ 21–23, in addition to a NHTSA Safety Recall Report explicitly noting "BMW received reports of additional fires . . . through 2011" and accordingly, "in May 2011, BMW implemented changes to

the . . . blower-regulator . . . to prevent fires in future model year BMW vehicles, *id.* ¶¶ 37–38. Such allegations are sufficient to allege knowledge of the Defects for purposes of Rule 9(b)'s heightened pleadings standard at the motion to dismiss stage. *See Opheim*, 2021 WL 2621689, at *15 ("Plaintiffs' allegations allow an inference that Defendants knew the timing chain, at least generally, was a problem. That is all they need for now [to survive a motion to dismiss.]"); *Cohen*, 2022 WL 721307, at *19 ("Discovery is the appropriate mechanism for determining precisely when Subaru's awareness of engine performance issues in certain vehicles transformed into actual knowledge of the specific fuel pump defect alleged in the Complaint."); *see also* Fed. R. Civ. P. 9(b) ("[K]nowledge[ ] and other conditions of a person's mind may be alleged generally.").

### 6.    Class Certification

BMW NA argues that class certification is impermissible for the Patlan Plaintiffs' proposed "Fire Classes" because the requisite individualized inquiries doom the predominance requirement of Federal Rule of Civil Procedure 23(b)(3).  ECF No. 5-1 at 28–30.  Courts throughout the Third Circuit have routinely found such arguments to be premature at the pleading stage.  *See In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d 679, 756 (D.N.J. 2021) ("Courts in this Circuit have declined to conduct a predominance inquiry upon a defendant's motion to strike/dismiss a plaintiff's class allegations, recognizing the dismissal of class claims before discovery and a class certification motion 'is the exception rather than the rule.'" (quoting *Luppino v. Mercedes-Benz USA, LLC*, No. 09-CV-5582, 2013 WL 6047556, at *7 (D.N.J. Nov. 12, 2013)).  Accordingly, because the issue of whether Plaintiffs can satisfy class certification requirements is a fact-intensive question, the Court declines to rule on BMW NA's contentions in this Opinion and will consider such arguments upon review of the Plaintiffs' motion for class certification.

7.      Application of New Jersey Law

BMW NA contends that the Patlan Plaintiffs cannot pursue breach of warranty claims under New Jersey law and that they cannot pursue nationwide consumer fraud claims under New Jersey law.  ECF No. 5-1 at 30–37.  As an initial matter, the Court need not address Defendant's argument insofar as it focuses on the Patlan Plaintiffs' ability to pursue breach of express warranty claims under New Jersey law in light of the Court's dismissal without prejudice of such claims above.  Nevertheless, while New Jersey's choice of law principles apply to this matter since federal courts with diversity jurisdiction must apply the choice of law principles of the forum state, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941), the Court is not required to decide which state's law applies to Plaintiff or a proposed nationwide class (or any subclass) at the motion to dismiss stage.

"Applying the factors necessary to determine choice of law . . . is a very fact-intensive inquiry."  *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (postponing choice of law analysis "until the parties present a factual record full enough")).  The choice of law analysis, therefore, has "routinely been found to be premature at the motion to dismiss phase of a class action lawsuit."  *Timing Chain*, 2017 WL 1902160, at *10; *see also Prudential Ins. Co. of Am. v. Goldman Sachs & Co.*, No. 12–6590, 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013) (choice of law analysis on motion to dismiss is premature); *Samsung*, 2009 WL 3584352, at *3 (same).  Here, the Court will defer such choice of law decisions, including the applicability of New Jersey law, until it considers a more developed factual record in conjunction with resolution of Plaintiffs' motion for class certification.[10]

───────────────

[10] Defendant filed a supplemental notice of authority asserting that *Cohen*, 2022 WL 721307, supports dismissal of out-of-state Plaintiffs' claims under New Jersey law.  ECF No. 132.  While

**B.  BMW NA's Motion to Dismiss or Stay Vasquez's Complaint**

BMW NA moves to dismiss or stay Vasquez's complaint pursuant to the first-filed rule,

pending the resolution of the Patlan action in which a complaint predicted on similar facts was

filed eight months prior.  *Vasquez*, ECF No. 4.

> The "first-filed rule" or "first-to-file rule" permits trial judges to exercise their
> discretion by enjoining the subsequent prosecution of similar cases ... in different
> federal district courts.  The letter and the spirit of the first-filed rule ... are grounded
> on equitable principles and the rule's primary purpose is to avoid burdening the
> federal judiciary and to prevent the judicial embarrassment of conflicting
> judgments.  Therefore, where related suits involving the same parties and subject
> matter are pending concurrently, the first-filed suit should have priority absent a
> showing that the balance of inconvenience favors transfer or unless there are special
> circumstances which justify giving priority to the second suit.  The rule encourages
> sound judicial administration and promotes comity among federal courts of equal
> rank.  The rule permits a district court to stay, transfer, or dismiss a duplicative
> later-filed action.  In determining the applicability of the first-filed rule, courts in
> the Third Circuit examine the chronology of the actions in addition to the
> overlapping     subject     matter,     issues,     claims,     and     parties.

*MacLean v. Wipro Ltd.*, No. CV 20-3414 (FLW), 2020 WL 7090746, at *5 (D.N.J. Dec. 4, 2020)

(internal citations and quotations omitted).

However, as discussed above, the Vasquez action was consolidated with the Patlan and

Wilkinson actions by Order of this Court on January 29, 2020 as related matters pursuant to Federal

Rule of Civil Procedure 42(a) and this District's Local Civil Rules.  *Vasquez*, ECF No. 27 at 2.

Therefore, because the risks underlying the first-filed rule's rationale are not present upon

consolidation, BMA's motion to dismiss or stay the Vasquez action is denied.  *See Price Home*

*Group, LLC v. Ritz-Craft Corp. of Pa., Inc.*, Case No. 16-cv-00668, ECF No. 16 at 2–3 (D.N.J.

---

the *Cohen* court opted to dismiss such claims at the motion to dismiss juncture, it implicitly
acknowledged that some courts find a choice of law determination to be premature at this stage of
the litigation.  *See Cohen*, 2022 WL 721307, at *7 ("[C]ourts in this Circuit have *sometimes*
determined that the choice of law analysis in a putative class action can be done at the motion to
dismiss stage." (quoting *Amato v. Subaru of Am., Inc.*, No. CV 18-16118, 2019 WL 6607148, at
*4 (D.N.J. Dec. 5, 2019) (emphasis added))).

July 20, 2016) (deciding that a motion to dismiss based on the first-filed rule of a similar case pending in another judicial district was moot upon transfer of the case to the District of New Jersey and consolidation with the case already pending in the District of New Jersey).

### C. BMW NA's Motion to Dismiss Wilkinson's Complaint

#### 1.    Application of New Jersey Law

BMW NA first contends that New Jersey law cannot apply to Plaintiff, a New York resident who purchased her vehicle in New York, or to a nationwide class. *Wilkinson*, ECF No. 6-2 at 6. For reasons described in Section III.A.7 *supra*, BMW NA's arguments on the application of New Jersey law, and choice of law more generally, will be considered upon the Court's review of Plaintiffs' motion for class certification.

#### 2.    Common-Law Fraud Claim

Defendant argues that Wilkinson's common-law fraud claim must be dismissed for failure to plead with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b). *Wilkinson*, ECF No. 6-2 at 15–17. As explained above, under Rule 9(b), "[a] complaint that alleges fraud is subject to . . . heightened pleading requirements," and must "state with particularity the circumstances constituting fraud or mistake." *Morano*, 928 F. Supp. 2d at 832 (quoting Fed. R. Civ. P. 9(b)). However, "plaintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim." *Feldman v. Mercedes-Benz USA, LLC*, No. 2:11-CV-00984 WJM, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) (citation omitted). As a court in this District has succinctly explained:

> [C]ourts are more willing to find that a complaint complies with Rule 9(b) where it asserts fraudulent omissions, rather than misrepresentation. [A] plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim. In such cases, the Rule 9(b) standard is relaxed. That is especially true where . . . the factual information is peculiarly within the defendant's knowledge or control. Thus, plaintiffs need not identify specific samples of representations on which they relied

which did *not* contain the allegedly omitted information, a standard which technically might encompass every statement of the defendants.  Rather, a plaintiff typically need only allege that the defendant failed to disclose material information[,] [and that omission] induced the plaintiff to enter into a transaction.

*DeFrank v. Samsung Elecs. Am., Inc.*, No. CV1921401KMJBC, 2020 WL 6269277, at *7 (D.N.J. Oct. 26, 2020) (citations and quotations omitted).

Here, Wilkinson proceeds with a fraud by omission claim (*see Wilkinson*, ECF No. 11 at 15–20), and the allegations in her complaint satisfy Rule 9(b)'s standard for purposes of this motion to dismiss.  Wilkinson alleges that, both at the time of her purchase and when she subsequently brought the vehicle in for service, BMW NA had knowledge, or should have had knowledge, of the relevant Defects in the automobile and the respective dangers following various incidents and reports, and failed to disclose such Defects.  Wilkinson Compl. ¶¶ 4–6, 23, 56–59, 63–64.  She further plausibly and specifically alleges that BMW NA omitted disclosure to induce consumers, including Wilkinson, to purchase the Defective Vehicles and that she justifiably relied on the lack of disclosure in making her purchasing decision.  *Id.* ¶¶ 49, 82, 55, 101–02.  Finally, Wilkinson alleges that she incurred damages as a result of the Defects insofar as a reasonable customer would not have paid the same amount for a Defective Vehicle if such Defects were disclosed.  *Id.* ¶¶ 13, 55.

Such allegations are sufficient to fulfill the Third Circuit's guidance that "plaintiffs must, at a minimum, 'support their allegations of ... fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story.'" *Gage v. Preferred Contractors Ins. Co.*, No. CV1920396MASZNQ, 2020 WL 5107351, at *2 (D.N.J. Aug. 31, 2020) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)); *see Opheim*, 2021 WL 2621689, at *14 (rejecting defendant's argument that plaintiffs' failure to allege "that, prior to their purchase, they were exposed to 'any advertisements, statements or literature

from [d]efendants that should have contained the allegedly omitted disclosure'" meant fraud was not sufficiently pled.).  Accordingly, BMW NA's motion to dismiss Wilkinson's common law fraud claim is denied.

### 3.   Warranty Claims

#### a.  Express Warranty

BMW NA moves to dismiss Wilkinson's breach of express warranty claim on the basis that her vehicle was "out of warranty" at the time Wilkinson alleges it was destroyed by fire. *Wilkinson*, ECF No. 6-2 at 17–18.  BMW NA explains that while the manufacturer's warranty is 4 years/50,000 miles, whichever comes first, Plaintiffs vehicle at the time of purchase "was at least five years old and had 49,000 miles on the odometer." *Wilkinson*, ECF No. 6-2 at 17.  Additionally, at "the time of the fire incident in 2018, it was 10 years old with likely scores of thousands of miles." *Id.* at 17–18.  Wilkinson counters that BMW NA ignores her argument which rests on an unconscionability theory, rather than that the defect manifested within the warranty period. *Wilkinson*, ECF No. 11 at 21–22.

As discussed for the Patlan Plaintiffs, courts in this District have found that breach of warranty claims that are otherwise untimely may proceed at the motion to dismiss stage when a plaintiff sufficiently alleges that a warranty is both substantively and procedurally unconscionable. *See Skeen*, 2014 WL 283628, *12 (collecting cases).  Wilkinson sets forth sufficient allegations to satisfy both requirements at this juncture.  As to substantive unconscionability, Wilkinson pleads that BWW "knowingly sold a defective product without informing consumers about the Fire Defects and in most instances the Fire Defects do not manifest itself until after the express warranty expires."  Wilkinson Compl. ¶ 114; *see Bullard v. Jaguar Land Rover Auto. PLC*, No. 20-14464, 2023 WL 4845873, at *7–8 (D.N.J. July 28, 2023) ("Courts have held that a warranty is substantively unconscionable when a car manufacturer knew that class engines would fail after the

end of the warranty period but before the vehicle's expected useful life . . . . Plaintiffs now adequately plead that Defendants had pre-sale knowledge of the Turbocharger Defect and that Defendants concealed the defect." (citations and quotations omitted)).

As to procedural unconscionability, Wilkinson, unlike the Patlan Plaintiffs, does assert a disparity in bargaining power and a lack of meaningful choice in setting the terms of the warranty. Wilkinson Compl. ¶ 115; *see Bullard*, 2023 WL 4845873, at *8 ("Plaintiffs have also plausibly pled that they had 'no meaningful choice in determining these time limitations' and that there was a 'gross disparity in bargaining power' ... which is sufficient to allege procedural unconscionability."). Though Defendant contests the plausibility of Plaintiff's procedural unconscionability allegations, "whether or not [Plaintiff presents] a compelling argument, [the complaint] does constitute a sufficient allegation of procedural unconscionability." *McCoy v. Samsung Elecs. Am., Inc.*, No. CV2119470KMJSA, 2023 WL 6140641, at *6 (D.N.J. Sept. 20, 2023). Therefore, the Court will deny Defendant's motion to dismiss Wilkinson's claim for breach of express warranty.

### b. *Implied Warranty*

Defendant sets forth two arguments in moving to dismiss Wilkson's breach of implied warranty claims: First, it argues that Wilkinson's claim for breach of implied warranty fails because New York implied warranty law requires privity between a plaintiff and defendant, which Plaintiff purportedly does not satisfy having purchased her vehicle from Legacy Infinity, rather than BMW. *Wilkinson*, ECF No. 6-2 at 19–21. Next, BMW NA contends that Wilkson's claims are untimely under the relevant statute of limitations. *Id.* at 21–22. By contrast, Wilkinson argues that New Jersey law, under which privity is not required, applies to her implied warranty claim. *Wilkinson*, ECF No. 11 at 25. Further, Wilkinson contends, even if New York law applies, several exceptions to the privity requirement allow her implied warranty claim to proceed. *Id.* at 25–27.

Moreover, Wilkinson asserts that equitable tolling of the statute of limitations likewise allows her claim to proceed. *Id.* at 28–30.

Defendant contends that New York law requires contractual privity to state a claim for breach of implied warranty for purely economic losses. *Kuzian v. Electrolux Home Prod., Inc.*, 937 F. Supp. 2d 599, 617 (D.N.J. 2013) (applying New York law). However, New Jersey law, which Wilkinson argues governs her claim, has no such requirement. *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 454 (D.N.J. 2012). Thus, to determine whether Plaintiff must allege privity to sufficiently assert her implied warranty claim would require the Court to engage in a complete choice of law analysis. Again, the Court will not do so at this juncture.

Because Plaintiff brings her warranty claim under New Jersey law (*see* Wilkinson Compl. ¶¶ 33–39), the Court will apply New Jersey law to the warranty claim on this motion. *See Harper*, 595 F. Supp. 2d at 491 (examining the claims under the assumption that New Jersey law governs as that is what the plaintiffs presented, where the choice of law analysis was not yet proper). Accordingly, Wilkinson need not have pleaded privity. Moreover, to the extent Wilkinson contends that exceptions to New York's privity requirement saves her claim if New York law applies, "the Court is reminded that '[t]he fact-intensive nature of privity frequently renders dismissal at the pleading stage premature.'" *Rieger v. Volkswagen Grp. of Am., Inc.*, No. 121CV10546NLHEAP, 2023 WL 3271116, at *13 (D.N.J. May 4, 2023). Thus, the Court will not dismiss Wilkinson's implied warranty claim for lack of privity.

Next, under New Jersey law, the statute of limitations for a breach of implied warranty claim is four years.[11] N.J. Stat. Ann. § 12A:2-725. The cause of action for breach of an implied warranty accrues "when delivery of the product is made, regardless of the purchaser's lack of

---

[11] The same is true under New York law. N.Y. U.C.C. Law § 2–725.

knowledge" of the defect, unless the statute of limitations can be tolled. *DeFillippo v. Whirlpool Corp.*, No. 18-cv-12523, 2019 WL 4127162, at \*13 (D.N.J. Aug. 30, 2019).  BMW NA argues that Wilkinson's complaint is time-barred because the vehicle was delivered to Plaintiff in July 2013 (and to the original owner in 2008) and she did not file suit until April 2019.  *Wilkinson*, ECF No. 6-2 at 21–22.  However, the statute of limitations may be tolled based upon fraudulent concealment, as Wilkinson argues, when a "defendant concealed facts necessary for a plaintiff to discover he had a claim."  *Opheim*, 2021 WL 2621689, at \*7 (citing *Timing Chain*, 2017 WL 1902160, at \*14).  "'[A] plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense' like the statute of limitations."  *Id.* (quoting *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citation omitted)).  Indeed, a court may dismiss a claim as untimely "only when the statute of limitations defense is apparent on the face of the complaint."  *Wisniewski v. Fisher*, 857 F.3d 152, 158 (3d Cir. 2017).  Because the allegations in Wilkinson's complaint do not rule out the possibility that the statute of limitations should be tolled pursuant to the fraudulent concealment doctrine based on BMW NA's purported conduct (*see* Wilkinson Compl. ¶¶ 40–43), Wilkinson's claims may proceed at this juncture and BMW NA may renew its statute of limitations defense at a later stage of the litigation.  *See Opheim*, 2021 WL 2621689, at \*7 ("The facts regarding VW America's affirmative actions will need to be developed in discovery."); *Wisniewski*, 857 F.3d at 158.[12]

### 4.    NYGBL Claims

BMW NA moves to dismiss Wilkinson's claims under the NYGBL as time-barred pursuant to the state's statute of limitations for such claims.  *Wilkinson*, ECF No. 6-2 at 24–25.  Actions brought under NYGBL §§ 349 and 350 "must be commenced within three years of the date of

---

[12] As explained for the Patlan Plaintiffs, because Wilkinson's implied warranty claim may proceed, so too may her MMWA claim.

26

accrual, which occurs when plaintiff is injured by the deceptive act or practice that violated the statute." *Statler v. Dell*, *Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012). Claims based on misrepresentations and omissions accrue at the time of purchase. *See Marshall v. Hyundai Motor America*, 51 F. Supp. 3d 451, 461 (S.D.N.Y. 2014). Accordingly, "[a]ccrual is not dependent upon any date when discovery of the alleged deceptive practice is said to occur." *Statler*, 841 F. Supp. 2d at 648.

Here, Wilkinson purchased her vehicle in July 2013. Wilkinson Compl. ¶ 20. However, Wilkinson did not file suit until April 2019, nearly three years after the three-year statute of limitations period had concluded in July 2016. Nevertheless, Wilkinson contends dismissal of such claims is inappropriate, in part, because "the doctrines of equitable tolling or equitable estoppel have been plead and appropriately apply in this case." *Wilkinson*, ECF No. 11 at 31–32. Again, the Court declines to dismiss on a statute of limitations basis at this juncture and takes no position on the merits of BMW NA's defense. As other courts have previously noted, where factual questions exist as to whether an equitable principle, based on a defendant's conduct, may render a claim timely despite a statute of limitations having run, such a defense may be better resolved at a subsequent stage of the litigation. *See, e.g.*, *Stewart-Wilson by Stewart v. United States*, No. 2:17-CV-01335, 2019 WL 1894707, at *1 (W.D. Pa. Apr. 29, 2019) ("This Court previously denied Defendant's motion to dismiss . . . which relied on the same timeliness argument presented here, on the basis that factual questions remained as to whether Plaintiff was entitled to equitable tolling."), *aff'd sub nom. D.J.S.-W. by Stewart v. United States*, 962 F.3d 745 (3d Cir. 2020); *BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 603 F. App'x 57, 59 (2d Cir. 2015) (summary order) (holding that it was "premature " to reject a fraudulent concealment tolling argument on a motion to dismiss); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 400 (S.D.N.Y. 2010) ("Resolution of a claim of fraudulent concealment so as to toll the statute

of limitations is intimately bound up with the facts of the case and is thus not properly decided on a motion to dismiss.").  Therefore, Wilkinson's NYGBL claims may proceed and BMW NA may renew its timeliness contentions at a subsequent juncture.

5.    Class Certification

BMW NA argues that Wilkinson cannot pursue a class action of her fraud-based claims because they involved individualized questions regarding exposure to and reliance upon allegedly defective misrepresentations. *Wilkinson*, ECF No. 6-2 at 26.  Moreover, BMW NA contends that individualized questions likewise doom the predominance inquiry for Wilkinson's desired "Fire Subclass." *Id.* at 27.  For reasons described in Section III.A.6 *supra*, BMW NA's arguments regarding the resolution of Wilkinson's claims through class action litigation and certifiability of any specific subclass will be considered upon the Court's review of Plaintiffs' motion for class certification.[13]

## IV.    **CONCLUSION**

Accordingly, for the foregoing reasons, BMW NA's motion to dismiss (ECF No. 5) the Patlan Plaintiffs' complaint is **GRANTED** as to Count Two (Breach of Express Warranty), and such Count is dismissed without prejudice, and **DENIED** as to all remaining Counts; BMW NA's motion to dismiss or stay (Case No. 19-cv-00144, ECF No. 4) Vasquez's complaint is **DENIED**; and BMW

---

[13] BMW NA, for the first time, addresses Wilkinson's unjust enrichment claim in its reply brief. *Wilkinson*, ECF No. 13 at 1 n.1 ("Plaintiff notes, correctly, that BMW NA failed to address her claim for unjust enrichment (Tenth Count) in its motion to dismiss.  However, Plaintiff purchased her pre-owned BMW vehicle from Legacy Infiniti in Lynbrook, New York.  ([Wilkinson Compl.] ¶ 20.)  She conveyed no benefit to BMW NA, and the claim fails.").  However, a party may not set forth an entirely new argument in a reply brief. *See Atl. Power & Elec. Co. v. Big Jake*, 583 F. Supp. 3d 631, 642 (D.N.J. 2022) ("The law is clear that reply briefs should respond to arguments raised in the opposition brief, or explain a position in the initial brief that the respondent refuted ... Reply briefs are not the time to present new argument." (quoting *Smithkline Beecham PLC v. Teva Pharm. USA, Inc.*, 2007 WL 1827208, at *1 (D.N.J. June 22, 2007)).  Therefore, the Court will not consider the merits of Defendant's contentions in this Opinion.

NA's motion to dismiss (Case No. 19-cv-09156, ECF No. 6) Wilkinson's complaint is **DENIED** as to all Counts.  An appropriate Order accompanies this Opinion.


**DATED:**  March 28, 2024


*s/Claire C. Cecchi*
_____
**CLAIRE C. CECCHI, U.S.D.J.**
